IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 12, 2005

## STATE OF TENNESSEE v. LARITA LYONS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-B-641    Cheryl Blackburn, Judge**

---

**No. M2003-00699-CCA-R3-CD - Filed June 1, 2005**

---

A Davidson County jury convicted the Defendant, Larita Lyons, of robbery, and the trial court sentenced her to serve five years in the workhouse. On appeal, the Defendant contends that the evidence is insufficient to sustain her conviction. Finding no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Sam Wallace, Jr., Springfield, Tennessee, for the appellant, Larita Lyons.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Victor S. Johnson, District Attorney General; Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

A Davidson County grand jury indicted the Defendant on one count of aggravated robbery. A Davidson County jury convicted the Defendant of the lesser-included offense of robbery, and the trial court sentenced the Defendant to serve five years in the workhouse, with ten days to serve, and the remainder on intensive probation.[1] The Defendant has not made the trial transcript part of the appellate record. It is the duty of the appellant to prepare a complete and accurate record on appeal. Tenn. R. App. P. 24(b). Thus, the failure to include the trial transcript could result in a waiver of this appeal. See Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). However, we may take judicial notice of the record in the Defendant's co-defendant's appeal since it is filed with the

---

[1]We note that the Defendant's co-defendant in this case, Andre Hicks, was tried with the Defendant, but he proceeded with his appeal separately.

clerk of this Court.  See Edward Drummer v. State, No. W2000-00414-CCA-R3-PC, 2001 WL 1011592, at *1 n.3 (Tenn. Crim. App., at Jackson, Aug. 29, 2001), *perm. app. denied* (Tenn. Dec. 31, 2001).  Therefore, in the interest of judicial economy, we will adopt the facts as set forth by this Court in that opinion.  State v. Andre Edward Hicks, No. M2003-00818-CCA-R3-CD, 2004 WL 737535 (Tenn. Crim. App., at Nashville, Apr. 2, 2004), *no perm. app. filed*.  In that opinion, this Court recited the facts as follows:

> On December 6, 2000, Steven Treece was working as the store manager for the Tennessee State University (TSU) bookstore in Nashville.  At approximately noon, [the Defendant], the store's bookkeeper, informed Treece that he needed to go to the bank because the "store needed some cash."  It was a "buy-back" period at the school, which meant that the store needed cash to "buy-back" textbooks from students.  At approximately two o'clock, Treece left the bookstore to go to the bank with Scott Pearson, the store's general merchandise manager.  Treece did not tell anyone, even Pearson, that they would be going to the bank.  The two went to the AmSouth Bank on Clarksville Highway and received $30,000 in cash, which Treece placed in a backpack.  They then returned to the store and parked in the loading dock area.
>
> Treece described the route to the bookstore, "From the parking area, there is a ramp that you walk up.  You go through a set of double doors, go down a short hallway, and turn left, and then behind, kind of tucked to the side is our elevator door."  According to Treece, no other office or business uses that elevator.  When Treece turned the corner to reach the elevator, he "saw a figure that was dressed all in black, and he was leaned up against the elevator doors."  The man was wearing a mask over his face, which exposed the "bridge" between his eyes.  Treece described the man as "[s]ix-one, brown complected, maybe 180 pounds[.]"  The man pulled a gun on Treece and pointed it at his chest.  Out of the corner of his eye, Treece saw Pearson, who had not yet rounded the corner, running away.  Treece put his hands up and gave the person the backpack filled with cash.  The robber initially told Treece to get on his knees, but the elevator door opened, and the robber told him to get on the elevator.  Treece complied, and the robber reached into the elevator and pressed the second floor button.  As the doors were closing, the person squeezed the trigger twice, although the gun did not fire.
>
> As soon as the elevator door opened on the second floor, Treece saw TSU Officer Frank White and told him that he had just been robbed.  White "jumped" on the elevator, and the two went downstairs to look for the robber.  According to Treece,
>
>> [w]hen we came out, when we hit the parking lot, you can either go to the right and go behind the residence halls or you can go diagonally to come in front of them and end up in the parking lot and so we came diagonally, running toward 33rd Avenue.

-2-

Pearson, who was trying to phone the police, saw the two men running across the campus and joined them in their pursuit. As they ran through a parking lot, they observed a man "dressed in the same clothes" as the robber. Treece stated, "He was, he wasn't running full speed, but he was moving really quickly, and he was looking side to side at the point that I first saw him." Treece identified the man, who now had his ski mask "rolled" up, as [Mr. Hicks]. Treece told Officer White he knew who it was. Treece was familiar with [Hicks] because he was [the Defendant]'s boyfriend. Treece explained, [Hicks] "sometimes would drop [the Defendant] off and pick her up so I would see him twice in the same day, so I saw him several times throughout the course of a couple of years." Pearson testified that he looked at the man and observed that he was dressed "exactly the same" as the person who he saw robbing Treece.

After [Hicks] looked back and saw Treece, "he sped completely across the street." The group then lost sight of [Hicks]. As they stood in the street, they saw "[the Defendant]'s rental car make a U-turn and go back the opposite way." At that point, Treece told both Officer White and Pearson that the robber was [Hicks]. Ultimately, the group went back to the store. After [the Defendant] was informed of the robbery, she stated that she had not spoken with [Hicks] since that morning. However, a subsequent review of her cell phone records indicated otherwise.

Further, the trial transcript from Hicks' appeal shows the following relevant evidence was presented at the Defendant's trial: Steven Treece, the bookstore's general manager, testified that the Defendant had worked with him since August of 1997, and, at the time of the robbery, she was in the back office working as the bookkeeper. He testified that, when the store needed money, either he or the Defendant would go to the bank, and it was the Defendant's responsibility to ensure that the store had the appropriate levels of money. He said that he knew Hicks because Hicks was the Defendant's boyfriend, and he believed that Hicks and the Defendant lived together and had a child together. Treece testified that, after the robbery and after Hicks had been identified, the Defendant told him that she had not spoken with Hicks since that morning. He said that the security officers asked the Defendant to contact Hicks, and he testified that she attempted to call him from Treece's office phone. Treece stated that the Defendant was trying to call Hicks by calling her own cell phone, because Hicks had the Defendant's cell phone on that day.

Treece testified that he is responsible for the overall operation of the bookstore, and, on the day of the robbery, the Defendant told him twice that he needed to go to the bank. He said that he obtained the checks to cash from the Defendant, signed them, grabbed two backpacks to carry the money in, and told the Defendant that he was leaving for the bank. He testified that, at that point, he asked Pearson to leave with him. He said that he used the service elevator and that, routinely, anyone who "did a bank run," including the Defendant, would use that elevator.

Thomas Scott Pearson, the TSU bookstore's general merchandise manager, testified that, on

-3-

December 6, 2000, he went to the bank with Treece. He said that Treece did not tell him that they were going to the bank until they were driving there. On cross-examination, Pearson testified that, after the robbery, the Defendant continued to work at the bookstore until around the time of her arrest.

The Defendant testified that she began to work at the TSU bookstore in August of 1997, and Treece already worked there as a manager. She said that, when this incident occurred, she worked as an accountant, and she was responsible for all of the registers and for the funds in the safe. She testified that she and four other managers had access to the safe. The Defendant testified that, on December 6, 2000, she arrived at work around 7:45 a.m., in order to give "the cashier the till," which is the drawer with a set base dollar amount of $200.00. She said that she then "counted the safe" to verify that it was in balance with what she had counted before she left the evening before, and she said that the amounts matched.

The Defendant said that Treece arrived at the bookstore between 9:00 and 9:30 that morning, and she told him that she did not think there were enough funds for "buy-backs." She testified that Treece made the decision about how much money was needed and what "increments" that money should be in. She said that Treece told her that he wanted to call in three checks of $10,000 each, and she pulled out the checks. The Defendant testified that Treece signed the checks, and she put the checks in a bank deposit bag and put them back in the safe. She said that Treece had written down the quantities that he wanted her to call into the bank, and she called the bank. The Defendant testified that the first branch of the bank did not have what Treece wanted, and she then called a second branch of the bank that was able to fulfill their request.

The Defendant testified that, around noon, Treece asked her if she could go to the bank, and she responded that she could not because she did not have her car that day. She said that Treece decided that he would go to the bank. The Defendant testified that there were several occasions that she had gone to the bank to pick up money, and she had previously picked up sums as large as $30,000. She said that the backpacks that were used to transport the large sums of money were kept in the accounting office, and it was common knowledge that the backpacks were used to carry money. She testified that she and at least three other employees knew that Treece was going to the bank. The Defendant testified that Treece and Pearson left between 12:30 and 1:00 p.m., and she did not remember how long they were gone. She said that she did not see Treece when he returned from the bank and found Officer White because she was at the textbook desk discussing an issue of a student's stolen book, which was the reason why Officer White was already at the bookstore. The Defendant testified that a student worker informed her of what had happened, and, shortly after that, Treece and Officer White came back to the store. She said that the officers asked her to go into Treece's office because Treece believed that this was done by her "kid's father or boyfriend." She testified that she went into Treece's office, stayed there for about two hours, and, eventually, went to the police station.

The Defendant testified that she left her cell phone in the car on the morning of December 6, 2000, and, according to her knowledge, Hicks had the cell phone on that day. She said that she

has a telephone in her office, and that she and Hicks exchanged phone calls between her office and her cell phone that day during her lunch break. She also identified several numbers that are assigned to the bookstore and were on the phone records of her cell phone, both incoming and outgoing from the cell phone, from that day. She testified that she did not recall making any of those phone calls, and she did not know who made those phone calls.

The Defendant testified that she did not tell Hicks or anyone outside the bookstore that Treece was going to the bank. She said that, from inside the bookstore, she could not see when Treece returned from the bank. She testified that she continued to work at the bookstore for about seventeen months, until around the time that she was charged in this case. She said that she had nothing to do with the robbery, and she did not get any of the proceeds from this robbery.

On cross-examination, the Defendant testified that Hicks is the father of one of her daughters, and she has been involved with Hicks since May of 1996. She said that, in December of 2000, he was living with her, but they were not staying in the same house at the time of this incident. She testified that Hicks drove her to work that morning so he could use her vehicle, but she had picked up Hicks from his sister's home.

The Defendant testified that there was a phone call incoming to her cell phone at 9:21 a.m. from a number that is registered as a phone at the front of the bookstore, and there was an outgoing call to that number about thirty seconds later. She said that she does not remember if she called Hicks from that number at that time, and there is no reason why she would have called him from that phone. The Defendant said that she did not speak with Hicks when the cell phone called her work phone at 10:07 a.m. because she was on the phone with the bank at that time. She testified that she remembers talking with Hicks once during her lunch break, although the phone records showed a series of calls from 12:10 p.m. through 1:00 p.m. She testified that she did not call Hicks at anytime after Treece had left to go to the bank. She said that, prior to the robbery, she did not tell anyone, other than Treece, that Hicks had her vehicle that day.

Based upon this evidence, the jury convicted the Defendant of the lesser-included offense of robbery.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to support her conviction for robbery. Specifically, she asserts that there was insufficient evidence to prove that she was involved in the robbery because she had no opportunity to participate directly in the event. The State counters that the evidence was sufficient to support the verdict.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Carter, 121

S.W.3d 579, 588 (Tenn. 2003); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). This Court may not substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

A conviction may be based entirely on circumstantial evidence where the facts are "'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone.'" State v. Reid, 91 S.W.3d 247, 277 (quoting State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993)). The jury decides the weight to be given to circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 457 (1958) (citations omitted). While single facts, considered alone, may count for little weight, when all of the facts and circumstances are taken together, they can point the finger of guilt at the Defendant beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Further, "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions . . . for the jury." Marable, 203 Tenn. 440, 313 S.W.2d at 457; see also State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2003). Under Tennessee Code Annotated section 39-11-401(a) (2003), "[a] person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." A person is criminally responsible for an offense committed by the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (2003).

We conclude that, considering the evidence in the light most favorable to the State, it is sufficient to support the Defendant's conviction. As previously determined, the evidence presented

was sufficient to convict Hicks of aggravated robbery. See Hicks, 2004 WL 737535, at * 2-3. Additionally, the Defendant told Treece, the store manager, that the bookstore needed money that day, and the Defendant requested that Treece go to the bank to obtain the funds. Treece and Pearson, the general merchandise manager, left for the bank around 2:00 p.m., approximately two hours after the Defendant's request. Treece did not tell anyone, including Pearson, that he was going to the bank. When he returned from the bank, he parked near the loading dock, which was not used by the general public or any other office or business, to his knowledge. After Treece was robbed, he and an officer went "to look for the robber," and, eventually, they came across a man wearing the same clothes as the robber who was "moving really quickly." The man had his ski mask "rolled" up, and Treece identified the man as Hicks. The Defendant and Hicks resided together, and they had a child together. Further, on the morning of December 6, 2000, the Defendant left her cell phone in her vehicle, and Hicks had the vehicle on that day. There were numerous telephone calls throughout the day between the Defendant's cell phone and phone numbers to the bookstore, including the Defendant's personal office telephone, especially before and during the time that this event occurred. This evidence is sufficient to sustain the Defendant's conviction for robbery. Accordingly, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. This issue is without merit.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the Defendant's conviction and sentence.

_____
ROBERT W. WEDEMEYER, JUDGE